JUSTICE NELSON,
concurring.
¶98 I concur.
¶99 Maniaci and her defense team[1] attempt to avoid the one issue that makes this case uniquely important-the elephant in the room: whether homosexuals in an intimate domestic relationship each have the right to parent the children they mutually agree that one party will adopt (or, presumably, conceive).[2] The District Court and this Court have properly answered that question in the affirmative based on the facts of this case and on the statutory scheme discussed. I agree with the District Court’s decision, and I concur with this Court’s decision.
¶100 Sadly, however, this case represents yet another instance in which fellow Montanans, who happen to be lesbian or gay, are forced to battle for their fundamental rights to love who they want, to form intimate associations, to form family relationships, and to have and raise children-all elemental, natural rights that are accorded, presumptively and without thought or hesitation, to heterosexuals.
¶ 101 The Court’s decision is grounded in the statutory scheme which was raised and argued. I remain absolutely convinced, nonetheless, that homosexuals are entitled to enjoy precisely the same civil and natural rights as heterosexuals as a matter of constitutional law. I wrote extensively on this and on the discrimination homosexuals face daily in my special concurrence in Snetsinger v. Montana University System, 2004 MT 390, ¶¶ 38-111, 325 Mont. 148, 104 P.3d 445 (Nelson, *538 J., specially concurring). I argued that this Court should recognize: (a) that laws and policies which deny people their fundamental rights on the basis of gender or sexual orientation violate the inviolable human dignity clause of Article II, Section 4 of the Montana Constitution; (b) that classifications of persons on the basis of gender or sexual orientation are sex-based and are, therefore, arbitrary and suspect under conventional equal protection analysis; and (c) reading Article II, Sections 4 and 34 together (which I believe is the better approach), that classifications based on gender or sexual orientation are suspect classifications in their own right and are in addition to those enumerated in the third clause of this State’s equal protection provision. See Snetsinger, ¶¶ 71-97 (Nelson, J., specially concurring).
¶102 I stand by my concurring opinion. Unfortunately, though, nothing has changed. I am convinced that until our courts, as a matter of law, accept homosexuals as equal participants with heterosexuals in our society, each person with exactly the same civil and natural rights, lesbian and gay citizens will continue to suffer homophobic discrimination. Regrettably, this sort of discrimination is both socially acceptable and politically popular.
¶103 Naming it for the evil it is, discrimination on the basis of sexual orientation is an expression of bigotry. And, whether rationalized on the basis of majoritarian morality, partisan ideology, or religious tenets, homophobic discrimination is still bigotry. It cannot be justified; it cannot be legalized; it cannot be constitutionalized.
¶104 Every person in Montana is entitled to human dignity; every person in Montana is entitled to individual privacy; and every person in Montana is entitled to seek happiness in all lawful ways. These are fundamental rights guaranteed, respectively, by Article II, Sections 4, 10, and 3 of the Montana Constitution, and no person may be denied these elemental, natural rights because of his or her sexual orientation. Indeed, while it will, no doubt, come as a shock to some, the fact is that lesbian and gay people are not excepted out of the protections afforded by the Montana Constitution. Lesbian and gay Montanans must not be forced to fight to marry, to raise their children, and to live with the same dignity that is accorded heterosexuals. That lesbian and gay people still must fight for their fundamental rights is antithetical to the core values of Article II and speaks, in unfortunate clarity, of a prevalent societal cancer grounded in bigotry and hate.
¶105 I concur in the Court’s Opinion.

 Alliance Defense Fund (counsel), and Montana Family Foundation and Pacific Justice Institute (amici curiae).

 I say they “attempt” to avoid this issue because each of the defense team’s participants makes a point of disavowing sexual orientation as playing any part in their involvement in this case-a point that (a) would not need to be raised if sexual orientation were, indeed, not implicitly at issue here and (b) is belied by each of these participants’ foundational beliefs opposing homosexuality.